UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELINA MARIE BRADSHAW,

     Plaintiff,                               Civil Action No. 12-12609

v.                                        HON. MARIANNE O. BATTANI
                                        U.S. District Judge
                                        HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Angelina Marie Bradshaw brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Tr. 3). Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #19] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #14] be DENIED.

## PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on March 5, 2008, alleging disability as of April 4, 2004. (Tr. 97-99, Tr. 99-108). After the initial denial of benefits, Plaintiff requested an administrative hearing (Tr. 71-72), which was held in Oak Park, Michigan on March 25,

2010, Administrative Law Judge ("ALJ") Jerome B. Blum presiding. (Tr. 29-56). Plaintiff, represented by attorney Diane Kwitoski, testified at the hearing, (Tr. 31-50), as did Vocational Expert ("VE") Elizabeth Pasikowski. (Tr. 51-56). On July 23, 2010, ALJ Blum found that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 24). On April 11, 2012, the Appeals Council denied review of the ALJ's opinion. (Tr. 1). Plaintiff filed for judicial review in this Court.

## BACKGROUND FACTS

Plaintiff, born March 28, 1980, was 30 years old when the ALJ issued his decision. (Tr. 58). She did not finish high school, but did obtain her GED. (Tr. 32-33). She previously worked on a nighttime office-cleaning crew and held a waitress position at a few fast food restaurants. (Tr. 47). Plaintiff alleges disability as a result of a closed head injury, bi-polar disorder, anxiety, depression, scoliosis/back problems, and severe migraines. (Tr. 65).

### A.  Plaintiff's Testimony

Plaintiff testified that she was living with her mother and her three children. (Tr. 32). She lived with her mother because she needed her mother's assistance in order to complete day-to-day tasks such as laundry, grocery shopping, house cleaning, getting her children ready for school in the morning, etc. (Tr. 32). Plaintiff testified that she had limited health insurance coverage through Great Lakes Insurance. (Tr. 39).

She dropped out of high school in 10th grade, and cited her inability to cope with the social aspect of high school as the cause. (Tr. 33). Eventually, she and a friend enrolled in

a GED program, and Plaintiff testified that she would not have been able to complete the program had it not been for the support of her friend. (Tr. 34). Plaintiff testified that, due to her mental/emotional problems, she is apathetic towards typical daily activities, but that she is able to complete them with help and encouragement from her friend. (Tr. 34).

Plaintiff testified that she was born with severe scoliosis. (Tr. 34). Her left leg is two inches shorter than her right leg. (Tr. 35). She testified that her current living arrangement required her to regularly walk up and down stairs, and that her physical impairments made that very difficult. (Tr. 36). She has never been given a lift to offset the difference between the length of right and left legs. (Tr. 36). Plaintiff testified that the scoliosis did not prevent her from getting around, and it did not leave her "housebound" when she was younger. (Tr. 38). Plaintiff said that she could sit for one hour, but would feel uncomfortable after 30 minutes and would have to shift her weight. (Tr. 39). She said that she was unable to stand in one spot for more than five minutes (Tr. 39), but that walking is "okay." (Tr. 40). She also said that she needed to elevate her legs "at least 10 times a day." (Tr. 40). Plaintiff testified that her doctor told her to force herself to sit up straight despite the pain that comes with it. (Tr. 41).

Plaintiff testified that she was receiving psychiatric treatment which included prescription medications to "control my mood swings better." (Tr. 41-42). Plaintiff testified that some of her medications, including Xanax, made her feel sleepy. (Tr. 42). Plaintiff said that the side effects of her medications have a significant impact on her ability to perform normal tasks, and that is why she lives with her mother. (Tr. 42).

-3-

Plaintiff testified that she experienced migraine headaches and had trouble holding things in her right hand (she is right-handed), and that the issues began after a domestic violence incident with a boyfriend in October 2003. (Tr. 42-43). As a result of the incident, her memory had been affected, and she had issues concentrating. (Tr. 43). Plaintiff testified that the migraine headaches occur four to six times a week. (Tr. 44). Plaintiff received monthly shots designed to help with the migraines; however, the shots caused Plaintiff to rest for two or three days. (Tr. 45).

Her most consistent stint of employment was as an office cleaner with her mother, the crew supervisor, for three to four years. (Tr. 47). She also held a job as a waitress, but she was not able to maintain employment because of anxiety that came from being in a public setting. (Tr. 47-48).

**B. Medical Evidence[1]**

### 1. Treating Sources

In October 2003, Plaintiff was seen by Dr. Robert Pierce for a neurological assessment following a domestic dispute between Plaintiff and her boyfriend at the time. (Tr. 184). Plaintiff complained that her boyfriend slapped and hit her on the head multiple times over a two-day span and she lost consciousness once. (Tr. 184). Dr. Pierce's notes indicate that Plaintiff was given a CAT of the brain that was negative, but that Plaintiff nonetheless suffers from bifrontal constant headaches associated with light and sound sensitivity, along

---

[1]Records pertaining to conditions unrelated to the disability claim have been reviewed in full and are omitted from discussion.

with nausea. (Tr. 184). Dr. Pierce noted that Plaintiff was awake, alert, and oriented during the examination, and her speech was fluent. (Tr. 185). He also noted that Plaintiff was able to remember three out of three objects after five minutes. (Tr. 185). Plaintiff's gait and station were normal, she was able to walk on her toes and heels, and she was graded 5 out of 5 on strength and was symmetric in all extremities. (Tr. 186). Plaintiff was diagnosed with post-concussion syndrome with symptoms including headaches, dizziness, mood lability, and memory loss.

In September 2004, Plaintiff began to receive counseling at Easter Seals Southeastern Michigan. According to treating notes, Plaintiff appeared to be cooperative and oriented and her remote memory was fair, while her recent memory was poor. (Tr. 213). She was estimated to have average intelligence, unremarkable thought processes, fair judgment, and fair insight. (Tr. 213). She was diagnosed with major depressive disorder after a single episode with her ex-boyfriend, and posttraumatic stress disorder from the same incident. (Tr. 213).

In January 2005, Plaintiff was admitted to North Oakland Medical Center. (Tr. 194). Dr. Phillip Masterson noted that Plaintiff was complaining of headaches and back pain, among other things. (Tr. 195). During his examination, Dr. Masterson felt that Plaintiff exhibited normal range of motion in her musculoskeletal system and extremities, and felt that Plaintiff was awake and alert, oriented, and exhibited no motor/sensory deficits. (Tr. 196).

Plaintiff also received chiropractic treatment in September 2007 from the Joslyn Chiropractic Center in Pontiac, MI. (Tr. 240). Plaintiff was treated by Dr. Leigh A. Elceser

four times during the month of September. (Tr. 240). In a letter dated March 21, 2008, Dr. Elceser said that Plaintiff was not treated at her facility for any condition that would render her disabled. (Tr. 239).

From October 2007 to March 2008, Plaintiff was seen by Dr. Nancy Akers. On a record dated November 26, 2007, Dr. Akers noted that Plaintiff complained about back pain. (Tr. 254). Plaintiff said that she had trouble leaving the house because of anxiety. (Tr. 252, 254). She felt that Plaintiff's gait and station were normal. (Tr. 254).

In February 2008, Plaintiff began psychiatric treatment at the Common Ground Sanctuary in Bloomfield Hills, MI. (Tr. 227). Plaintiff complained of depression, frequent crying spells, no interest in daily activities, and had difficulty caring for her children. (Tr. 227). She was diagnosed with Major Depressive Affective Disorder, Single Episode, Unspecified Degree. (Tr. 232).

### 2. Non-Treating Sources

In May 2008, Dr. Richard K. Carroll conducted a consultative physical examination on behalf of the State of Michigan and the Social Security Administration (SSA). (Tr. 264). During his examination, Dr. Carroll noted that Plaintiff's range of motion in all joints was checked and full. (Tr. 265). Her hands had full dexterity and grip. (Tr. 265). The doctor noted a "very mild scoliosis when she bends forward." (Tr. 265). Plaintiff was able to heel to toe walk without difficulty, squat with difficulty, and hop without difficulty. (Tr. 265). Dr. Carroll concluded that Plaintiff had some sensitivity to light, but no obvious deficits from her closed head injury with the exception of migraine headaches. (Tr. 266). The doctor also

-6-

determined that Plaintiff had mild scoliosis and that it did not appear to limit her ability to function.  (Tr. 266).

In June 2008, Michael Matouk, M.A., L.L.P. conducted a consultative psychiatric examination on behalf of the State of Michigan and the SSA.  (Tr. 269).  Plaintiff was able to count forward serial 3s with slight difficulty, but she could not count reverse serial 3s and struggled with reverse serial 2s.  (Tr. 269).  Plaintiff denied suicidal and homicidal ideation, and denied auditory hallucinations.  (Tr. 269).  Matouk concluded that Plaintiff had normal mental capacities and intact reality and cognitive function.  (Tr. 270).  The doctor did feel she exhibited signs and symptoms of mood liability, such as Bipolar Disorder.  (Tr. 270).  Matouk diagnosed Plaintiff with Bipolar I Disorder.  (Tr. 271).

In July 2008, Dr. Leonard C. Balunas, Ph.D. performed a non-examining Psychiatric Review Technique of Plaintiff's medical records, finding the presence of an Affective Disorder (Bipolar Syndrome).  (Tr. 272, 275).  Under the "'B' Criteria," Dr. Balunas found that Plaintiff experienced mild restrictions in daily living and moderate limitations in maintaining social functioning and maintaining concentration, persistence, or pace ("CPP") with no episodes of decompensation.  (Tr. 282).  Dr. Balunas also completed a Mental Residual Functional Capacity Assessment, finding that Plaintiff had moderate difficulties with the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; and the ability to interact appropriately with the general public.  (Tr. 286-87).  Dr. Balunas concluded that Plaintiff could perform unskilled work involving one and two-step

instructions with a limited need for sustained concentration, and minimal contact with the general public.  (Tr. 288).

### C.    Vocational Expert Testimony

VE Elizabeth Pasikowski testified that Plaintiff's past relevant work positions as a janitor and as a waitress were both unskilled and performed at a light exertional level.[2]  (Tr. 51).  The ALJ asked the VE to assume that, because of Plaintiff's problems with her left leg and scoliosis, she would be unable to go back to her past relevant work.  (Tr. 51).  The ALJ then asked whether the Plaintiff would be able to perform "any type of clerical work, non-industrial work, office building environments, that would be unskilled and sedentary.  Jobs that would allow her a great deal of flexibility in sitting and standing."  (Tr. 52).

The VE responded that Plaintiff could work as an information clerk (5,400 jobs in the State of Michigan); reception clerk (7,200); identification clerk/booth clerk/badge checker (2,200); and gate tender (2,400).  (Tr. 53).  When asked for a description of these positions' responsibilities, the VE said these were sit-down jobs, usually with one or two steps at the most, usually involved only paper and pencil, and offered pretty liberal restrictions on sitting and standing.  (Tr. 54).  The ALJ then asked if there were any jobs in the national economy

---

[2]  20 C.F.R. §404.1567 (a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;" *light* work as "lifting no more and 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involved lifting no more than 100 pounds at a time with frequent lifting of objects weighing up to 50 pounds.

-8-

available to Plaintiff if her statements concerning the severity of her pain were true, and the VE said that all employment would be precluded. (Tr. 54).

Plaintiff's attorney asked if the positions she identified to the ALJ required the employee to sit for six hours throughout the day, and the VE responded that the employee would be required to be present for eight hours a day, but eventually conceded that the employee would need to be able to sit for six hours in an eight-hour day. (Tr. 55). Plaintiff's attorney then asked if a person would be precluded from employment if she had to receive a shot every month that caused her to rest for two days. (Tr. 55). The VE responded that the employee would require an accommodation and that most employers would not allow a person to miss two days a month on a consistent basis, but suggested that the employee should get the shot on a Friday afternoon. (Tr. 55-56). Finally, Plaintiff's attorney asked if a person employed in any one of the identified positions would be required to maintain concentration for at least 80% of the time, and the VE responded, "Correct." (Tr. 56).

### D.    The ALJ's Decision

Citing Plaintiff's medical records, the ALJ determined that Plaintiff suffered from the severe impairments of major depressive disorder, post-traumatic stress disorder, scoliosis, and migraine headaches, but found that none of the impairments met or equaled a listed impairment under 20 C.F.R Part 404, Subpart P, Appendix 1. (Tr. 20). He found that Plaintiff experienced mild restrictions in activities of daily living and social functioning, but moderate difficulties with CPP. (Tr. 19). He found that Plaintiff retained the Residual

Functional Capacity ("RFC") to perform sedentary work, except that she was able to alternate between sitting and standing as needed and only perform simple, unskilled tasks. (Tr. 22). The ALJ found that Plaintiff could not return to her past relevant work as a janitor or waitress but, relying on the VE's testimony, the ALJ found that Plaintiff could perform other work that existed in the national economy. (Tr. 23).

The ALJ rejected Plaintiff's claims regarding the extent of her physical and mental limitations. First, he cited a physical evaluation in October 2003 which noted normal gait and strength throughout all extremities, intact sensation, and a normal neurological evaluation. (Tr. 21). He also cited February 2008 records that said that Plaintiff could maintain her activities of daily living and had no trouble walking, and March 2008 records from a chiropractor that said that nothing in Plaintiff's back would disable her. (Tr. 21). The ALJ referenced Dr. Akers's February 2008 records that said that Plaintiff needed to be restricted to sedentary work, and Dr. Inwald's November 2009 and January 2010 records that said that Plaintiff was unable to work and would need complete freedom to rest and was unable to do any lifting, standing, walking or sitting. (Tr. 21). However, the ALJ rejected these opinions because "the objective findings do not corroborate limitations which would preclude all work activity." (Tr. 21). Additionally, the ALJ held that "[t]here is no evidence which corroborates that the claimant must elevate her legs throughout the day or that the claimant would need complete freedom to rest." (Tr. 21).

Regarding her alleged mental limitations, the ALJ noted that Plaintiff has not been compliant with psychotherapy on two separate occasions (September 2005 and Fall of 2008).

-10-

(Tr. 22).  The ALJ discussed Dr. Inwald's January 2010 treating records which found that Plaintiff would have marked difficulty working in proximity with others, dealing with the public, and performing even simple tasks, but rejected the doctor's conclusion because Dr. Inwald specialized in musculoskeletal pathology, not psychiatry.  (Tr. 22).  Finally, the ALJ noted the vocational counselor's conclusion that Plaintiff would be unable to maintain employment due to moderate difficulties with social functioning, concentration, and migraine headaches, but held that "these conclusory statements are not corroborated by the objective medical evidence."  (Tr. 22).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. § 405(g); *Sherrill v. Secretary of Health and Human Services*, 757 F.2d 803, 806 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less than a preponderance.  It is "such relevant evidence as a reasonable mind might accept to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. V. NLRB*, 305 U.S. 197, 229, S.Ct. 206, 83 L.Ed. 126 (1938)).  The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts."  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."  *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).  The court must examine the

administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death of which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. § 416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at Step 5 to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health and Human Services*, 735 F.2d 962, 964 (6th Cir. 1984).

## ANALYSIS

### A. Substantial Evidence

Plaintiff alleges that two of the ALJ's findings – that Plaintiff suffered from a mild deficiency in social functioning and that she suffered from a moderate deficiency with CPP

– were not supported by substantial evidence and, therefore, constitute reversible error.

Under the deferential substantial evidence standard, an ALJ need not support his findings with a preponderance of the evidence. *Mullen, supra*, 800 F.2d at 545. By the same token, "cherry picking" or disregarding favorable statements that, as a whole, demonstrate the need for long-term mental health intervention, amounts to a distortion of the record. "'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record." *Laskowski v. Apfel*, 100 F.Supp.2d 474, 482 (E.D. Mich. 2000) (citing *Cotter v. Harris*, 642 F.2d 700, 706 (3rd Cir. 1981). Likewise, "[s]ubstantial evidence cannot be based on fragments of the record." *Laskowski*, at 482.

### 1. Social Functioning

Plaintiff argues first that the ALJ's finding that she suffered only a mild deficiency in social functioning was not supported by substantial evidence, and alleges that the evidence used and cited by the ALJ was contrary to his ultimate conclusion. *Plaintiff's Brief* at 11. Plaintiff alleges that the medical records from Common Ground Sanctuary (Tr. 223-237) and psychological examiner Michael Matouk (Tr. 267-271) can only be read as offering support for a higher degree of limitation with social functioning, and that the ALJ's failure to read it as such constitutes reversible error. *Plaintiff's Brief* at 11-13. Additionally, Plaintiff cited Dr. Balunas's Mental Residual Functional Capacity Assessment, which concluded that Plaintiff suffered from moderate difficulties with social functioning. *Plaintiff's Brief* at 12.

The Court disagrees with Plaintiff, and finds that substantial evidence generously

supports the ALJ's determination that Plaintiff suffers from mild deficiencies in social functioning. In the Common Ground treating records, the clinician states that he does not believe Plaintiff had a problem with talking or communicating her need to others or understanding what someone says to her most of the time. (Tr. 231). In his Mental Residual Functional Capacity Assessment, Dr. Balunas noted that Plaintiff was "Not Significantly Limited" in: the ability to ask simple questions or request assistance; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the ability to maintain socially appropriate behavior and to adhere to basic standard of neatness and cleanliness. (Tr. 287). Balunas felt Plaintiff was "Moderately Limited" only in her ability to interact appropriately with the general public. (Tr. 287).

Furthermore, Plaintiff cites Matouk's treating notes, arguing that the ALJ overlooked Plaintiff's inability to care for her children as evidence of a moderate deficiency in social functioning, (*Plaintiff's Brief* at 11). But those notations are of Plaintiff's subjective complaints, not objective observations or statements of the treating clinician regarding his own perceptions or diagnosis of Plaintiff's condition. (Tr. 267-269). Plaintiff's argument is without merit, and the ALJ's finding that Plaintiff suffered from mild deficiencies in social functioning is supported by substantial evidence on the record as a whole.

### 2. Concentration, Persistence, or Pace

Regarding the ALJ's finding that Plaintiff had moderate deficiencies in CPP, Plaintiff argues that the ALJ's decision was not supported by an accurate reading of the record as a

whole.  Plaintiff points to the ALJ's  Step 3 Analysis, where he found that Plaintiff had moderate deficiencies in CPP, but noted that "psychiatric evaluations indicate that the claimant exhibits intact memory, adequate judgment, and adequate concentration." *Plaintiff's Brief* at 13.  Plaintiff also points to the ALJ's CPP analysis where he discussed Plaintiff's completion of two online courses, and argues that her inability to pass these online courses undermines the sufficiency of the evidence.  *Plaintiff's Brief* at 13.

A review of the record shows that the ALJ's finding that Plaintiff suffered from moderate deficiencies in CPP was well supported by substantial evidence on the record. First, Plaintiff's ability to see the online courses through to completion is instructive of an ability to concentrate even though she did not pass her courses.  Plaintiff's argument is not bolstered by anything other than her own subjective complaints, and she again cites records that contain only her own complaints. (Tr. 324).  Plaintiff's vocational expert relied upon the state's finding that Plaintiff suffered from moderate deficiencies with CPP to form the basis of her own opinion.  (Tr. 326).

Furthermore, the ALJ clearly acknowledged Plaintiff's limitation with CPP in Step 3 by finding that Plaintiff suffered from a moderate deficiency in CPP.  (Tr. 19).  The ALJ highlighted Dr. Balunas's finding of a moderate deficiency with CPP, and dismissed Dr. Inwald's finding of marked deficiency due to Dr. Inwald's speciality, musculoskeletal pathology, not psychiatry.  (Tr. 22).  The ALJ's conclusion that Plaintiff suffered from moderate deficiencies with CPP is supported by substantial evidence.

Additionally, Plaintiff's claim that the ALJ failed to take into account the effect of her

-15-

migraines and medications when evaluating her moderate deficiency in CPP is not supported by the administrative record. The ALJ was within his own discretion when he determined that Plaintiff's side effect testimony was not credible, and his decision should not be disturbed. "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)(citing *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

First, the ALJ acknowledged Plaintiff's testimony concerning the frequency (4-6 times a week) with which she is affected by migraine headaches. (Tr. 20). Later in his opinion, the ALJ referenced a CT scan of Plaintiff's brain that was negative, and noted that Plaintiff's migraines where being treated with medication. (Tr. 21, 22). The ALJ also asked the VE whether "an individual, because they had to take a shot every month and it was documented, that it prevents them from possibly doing – going to work two days a month, just for that alone, would that be preclusive of work?" (Tr. 55). The VE responded that an accommodation would be required over time, but that a reasonable person would schedule the shots on a Friday afternoon so that they would not have to miss work. (Tr. 55). The ALJ was in the best position to make a credibility determination as to the migraines' alleged intensity and effect on Plaintiff and her ability to find and perform gainful activity. Plaintiff's argument is without merit.

### B. Hypothetical Question

Plaintiff also argues that the hypothetical limitations posed to the VE did not account

-16-

for Plaintiff's alleged functional limitations.  Specifically, plaintiff argues that the hypothetical question did not convey Plaintiff's "considerable social issues and inability to interact with the general public," as well as Plaintiff's "significant" difficulties with CPP. *Plaintiff's Brief* at 16.  Thus, Plaintiff argues that the VE's testimony concerning the availability of jobs in the national economy cannot act as substantial evidence for the ALJ's Step 5 determination.

A hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments.  *Varley v. Commissioner of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987).  While the Sixth Circuit has rejected the proposition that all afflictions must be spelled out, "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments." *Webb v. Commissioner of Social Sec.*, 368 F.3d 629, 632 (6th Cir. 2004).  If the hypothetical question is deficient, the ALJ cannot rely upon the VE's testimony to prove the existence of a substantial number of jobs that Plaintiff can perform in the national economy.  *Edwards v. Barnhart*, 383 F.Supp.2d 920, 927 (E.D.Mich. 2005).

The ALJ found that Plaintiff suffered only a mild impairment in social functioning. When an impairment in social functioning is rated as "none" or "mild," "the impairment is 'not severe,' unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  20 C.F.R. § 416.920a.  A "non-severe" impairment is one that "does not significantly limit [the claimant's] physical or mental ability to basic work activities."  20 C.F.R. § 404.1521.  When a function is found

-17-

to be non-severe, it cannot serve as the basis for a finding of disability. *Merkel v. Commissioner of Social Sec.*, 2008 WL 2951276, *10 (E.D. Mich). Therefore, it was not error for the ALJ to omit any reference to a deficiency in social functioning when he posed the hypothetical questions to the VE.

Regarding the hypothetical question and its alleged failure to account for Plaintiff's moderate deficiencies in CPP, Plaintiff's claim is without merit. "An ALJ is not required to include the phrase "moderate difficulties in concentration, persistence, and pace," or other specific language in the hypothetical. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001); *Webb, supra*, 368 F.3d at 633. There is a split of authority in this district and elsewhere as to what sufficiently conveys moderate deficiencies with CPP. Cases from this district and elsewhere have held that language such as "unskilled work" or "simple work" are generally insufficient to account for moderate deficiencies in CPP. *See Edwards, supra*, 383 F.Supp.2d at 931.; *Bankston v. Commissioner*, 127 F.Supp.2d 820, 826 (E.D. Mich. 2000); *Ealy v. Commissioner*, 594 F.3d 504, 516 (6th Cir. 2010); *Newton v. Carter*, 92 F.3d 688, 695 (8th Cir. 1996). Other courts have held that limitations such as "one to two step tasks" or "simple routine tasks" in the hypothetical question adequately account for moderate deficiencies with CPP. *Lewicki v. Commissioner of Social Sec.*, 2010 WL 3905375, *2 (E.D. Mich. Sept. 30, 2010) and *Sutherlin v. Commissioner of Social Sec.*, 2011 WL 500212. *3 (E.D. Mich. February 8, 2011).

While the Court of Appeals in *Ealy, supra*, found that the hypothetical's limitation of "simple repetitive tasks" was insufficient to account for moderate deficiencies in CPP, the

Court reasoned that the ALJ impermissibly paraphrased a non-treating source's conclusion that the claimant should be limited to "simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'" *Id.*, 594 F.3d at 516. The Court's opinion did not hold that "simple and repetitive," or something similar, are always erroneous. Instead, the evidence of record and the ALJ's opinion must be considered in their entirety in determining whether the hypothetical limitations adequately describe the claimant's limitations. *Smith, supra*; *Schalk v. Commissioner of Social Sec.*, 2011 WL 4406824, *11 (E.D. Mich. 2011) ("no bright-line rule" that moderate concentrational deficiencies require the inclusion of certain hypothetical limitations) (citing *Hess v. Commissioner of Social Sec.*, No. 07-13138, 2008 WL 2478325, at *7 (E.D. Mich. 2008)).

In this case, the limitations within the hypothetical questions sufficiently conveyed Plaintiff's moderate deficiencies with CPP. The ALJ's initial hypothetical question to the VE limited Plaintiff to performing unskilled work. (Tr. 52). However, reviewing the transcript of the administrative hearing, the ALJ presented Plaintiff's limitations to the VE in a piecemeal fashion, wherein the ALJ sought an answer from the VE after each limitation given. During this back and forth between the ALJ and the VE, the ALJ asked whether the previously identified positions (information clerk, reception clerk, identification clerk/badge checker, and gate tender) involved "[u]sually one- or two-step[s] that somebody has to do," and the VE said that they required "[a] couple steps at the most." (Tr. 54). While Plaintiff's hypothetical limitations were not given to the VE in a solitary question, the ALJ still made those limitations known to the VE, and the VE still determined that Plaintiff could perform

jobs that exist in national economy.

### C.  Bipolar Disorder in the Listing of Severe Impairments

Finally, Plaintiff argues that the ALJ failed to include the diagnosis of bipolar syndrome in the list of severe impairments at Step 2.  *Plaintiff's Brief* at 16.  Plaintiff cites four separate medical sources (Tr. 252, 270-71, 295, 304), and those sources' conclusions that Plaintiff suffered from affective/bipolar disorder.  *Id.*  Plaintiff contends that the ALJ's failure to include the diagnosis in the list of severe impairments or discuss the condition in a substantial way constitutes reversible error.  *Id.*

As the Commissioner correctly points out, "[i]n the Sixth Circuit, the severity determination is 'a *de minimis* hurdle in the disability determination process."  *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998)).  "The goal of the test is to 'screen out totally groundless claims.'"  *Id.* (quoting *Farris v. Secretary of Health & Human* Services, 773 F.2d 85, 89 (6th Cir. 1985)).  Thus,  an ALJ's failure to include a specific condition in the list of severe impairments is irrelevant if the ALJ finds the existence of another severe impairment.  *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987).  The real issue is whether the ALJ properly considered the alleged impairment in his RFC assessment.  *Id.*

Plaintiff's argument that the ALJ failed to deal with her bipolar disorder in a substantial way is without merit.  The ALJ discussed Plaintiff's diagnosis, but noted that the psychiatric evaluations indicate that Plaintiff is nevertheless able to maintain her normal activities of daily living, live on her own, care for her children, grocery shop, and go to

church. (Tr. 22). Additionally, the ALJ noted that Plaintiff has not been compliant with therapy meant to manage her symptoms. *Id*. Finally, the ALJ noted that the only opinions that indicated that Plaintiff's bipolar disorder would prevent her from finding and maintaining gainful employment were those of Dr. Inwald, who stated that he primarily dealt with musculoskeletal pathology, not psychiatry, and a vocational counselor. *Id*. Therefore, the ALJ's treatment of Plaintiff's bipolar disorder was not in error.

## **CONCLUSION**

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment [Doc. #14] be DENIED, and that Defendant's Motion for Summary Judgment [Doc. #19] be GRANTED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1 (d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 425 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificty will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the

-21-

opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

**s/ R. Steven Whalen**
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date:  May 8, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on May 8, 2013.

s/Johnetta M. Curry-Williams
Case Manager